IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

WILLIAM ABLES,
    Petitioner,

vs.                                Case No. 5:08cv204/RH/EMT

IKE EICHENLAUB, Warden,[1]
    Respondent.
_____/

**ORDER, REPORT AND RECOMMENDATION**

    This matter is before the court up a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241 (Doc. 1).  Respondent filed an answer (Doc. 10), and Petitioner filed a reply (Doc. 12).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of the issues raised by Petitioner, it is the opinion of the undersigned that Petitioner is not entitled to relief.

I.    BACKGROUND

    On May 17, 2007, Petitioner was convicted in the United States District Court for the Western District of Tennessee of being a convicted felon in possession of ammunition, in violation of 18 U.S.C. § 922(g), and sentenced to forty-eight (48) months of imprisonment (Doc. 1 at 2; Doc. 10 at 1, Declaration of Sarah M. Schuh ¶ 3).  According to Petitioner's Presentence Investigation Report, Petitioner's conviction was based upon his possession of approximately one hundred (100) rounds of ammunition (*see* Doc. 10, Schuh Decl. ¶ 4, Attach. 2, Presentence Investigation Report).  Petitioner admits he was convicted of possessing "a grab bag of assorted ammunition, 80 rounds that fit at least 13 different guns" (Doc. 12 at 3).

---

[1]Ike Eichenlaub succeeded Scott Middlebrooks as Warden of FCI-Marianna and is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

While housed at the Federal Prison Camp in Marianna, Florida, Petitioner was interviewed by Bureau of Prisons (BOP) staff to determine his eligibility for participation in the Residential Drug Abuse Treatment Program (RDAP) (Doc. 10, Schuh Decl. ¶ 12). Although Petitioner was determined eligible to participate in RDAP and is now participating in the program (*see* Doc. 10, Schuh Decl. ¶ 12, Attach. 6; Doc. 12 at 1), he was deemed ineligible for early release under 18 U.S.C. § 3621(e) because the crime of which he was convicted was listed as an "excluding" crime per the BOP Director's discretion, as set forth in BOP policy (Doc. 1 at 3; Doc. 10, Schuh Decl. ¶¶ 12, 13, Attachs. 5, 6). Petitioner filed informal and formal grievances at the institutional level, and he appealed the denial of those grievances to the Regional Director of the BOP and the Central Office (*see* Doc. 1 at 3; Doc. 10, Schuh Decl. ¶ 7). Respondent concedes that Petitioner exhausted his administrative grievances concerning the issue raised in the instant petition (Doc. 10 at 3).

II.     ANALYSIS

In the instant petition, Petitioner challenges the BOP's decision to deny his early release on the following two grounds: (1) the administrative regulation upon which the BOP's decision was based, specifically, Rule 550.58 of the Code of Federal Regulations, is invalid under the Administrative Procedure Act (APA); and (2) the BOP's applying the exclusion to him but not to inmates housed in the Ninth Circuit Court of Appeals, in light of the Ninth Circuit's determination that Rule 550.58 violated the APA, *see* Arrington v. Daniels, 516 F.3d 1106 (9th Cir. 2008), violates the Equal Protection Clause (Doc. 1 at 3, 6; Doc. 12 at 5). Respondent contends Petitioner's claims are without merit.

As part of the 1994 Violent Crime Control and Law Enforcement Act, the BOP was charged with making available "appropriate substance abuse treatment" for inmates with "treatable condition(s) of substance addiction or abuse." 18 U.S.C. § 3621(b). If an inmate completes a drug and alcohol treatment program authorized under 18 U.S.C. § 3621(e),

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

§ 3621(e)(2)(B). Thus, section 3621(e)(2)(B) provides an incentive for inmates to enroll in and complete the treatment program.

To implement § 3621(e)(2)(B), the BOP promulgated its first rule and corresponding regulation, in 1995, governing substance abuse treatment programs and inmate eligibility for early release consideration under section 3621. 60 Fed. Reg. 27692 (May 25, 1995); 28 C.F.R. § 550.58 (1995). Because 18 U.S.C. § 3621(e) did not define "nonviolent offense," the BOP relied upon the definition of "crime of violence" as found in 18 U.S.C. § 924(c)(3), to determine whether or not a particular inmate would be eligible for early release as a "non-violent offender." *See* 60 Fed. Reg. 27692 (May 25, 1995). Months later, the BOP issued a program statement to implement the early release eligibility provision of 18 U.S.C. § 3621(e) and 28 C.F.R. § 550.58. *See* Federal Bureau of Prisons Program Statement 5162.02, Definition of Term "Crimes of Violence," § 7.a. (July 24, 1995). Program Statement 5162.02 not only excluded inmates within the definition of "crime of violence" as established by the 1995 interim rule from eligibility for early release, but additionally excluded inmates with convictions for felon in possession of ammunition under 18 U.S.C. § 922(g) as well as drug trafficking convictions under 21 U.S.C. § 841 or 846, if the offender received a sentence enhancement for weapons possession under United States Sentencing Guidelines Manual § 2D1.1(b)(1). Program Statement 5162.02, §§ 7, 9.

The Courts of Appeals were divided on whether the BOP had the discretion to exclude drug offenders and felons in possession of firearms and ammunition. Five Courts of Appeals, including the Eleventh Circuit, held impermissible the BOP's interpretation of § 3621(e) as precluding from eligibility for early release prisoners who received sentence enhancements for nonviolent offenses. *See* Byrd v. Hasty, 142 F.3d 1395, 1397–98 (11th Cir. 1998); Fristoe v. Thompson, 144 F.3d 627, 631 (10th Cir. 1998) (same); Martin v. Gerlinski, 133 F.3d 1076, 1079–80 (8th Cir. 1998) (same); Roussos v. Menifee, 122 F.3d 159, 162–64 (3d Cir. 1997) (same); Davis v. Crabtree, 109 F.3d 566, 569 (9th Cir. 1997) (same). Three Courts of Appeals reached the opposite conclusion. *See* Pelissero v. Thompson, 170 F.3d 442, 447 (4th Cir. 1999) (holding BOP's definition of crime of violence was permissible); Parsons v. Pitzer, 149 F.3d 734, 737–39 (7th Cir. 1998) (same); Venegas v. Henman, 126 F.3d 760, 763 (5th Cir. 1997) (same).

In response to this lack of consistency, the BOP revised 28 C.F.R. § 550.58 in 1997 by issuing an interim rule that asserted the BOP's discretionary authority to determine eligibility for early release under § 3621(e) and removed its reference to § 924(c)(3) from the regulation. 62 Fed.

Reg. 53690 (Oct. 15, 1997). At the same time the BOP issued the 1997 interim rule, it issued Program Statement 5162.04 to assist in implementing BOP policies and programs, including the early release eligibility provision of 18 U.S.C. § 3621(e). Program Statement 5162.04, Categorization of Offenses (Oct. 9, 1997). That Program Statement has two main sections, Section 6, which lists offenses the BOP categorizes as crimes of violence, and Section 7, which lists offenses that, in the Director's discretion, preclude an inmate's receiving certain BOP program benefits. *See* Program Statement 5162.04, §§ 1, 6, 7. Petitioner's offense, a violation of 18 U.S.C. § 922(g), is included in Section 7 of the Program Statement. Program Statement 5162.04, § 7.e.

Litigation once again ensued. This time challenges focused on whether the categorical exclusion rule was a permissible exercise of the BOP's discretion. Two Courts of Appeals, including the Eleventh Circuit, concluded that the 1997 interim rule was not a permissible exercise of the BOP's discretion to narrow the class of prisoners eligible for early release under § 3621(e). *See* Kilpatrick v. Houston, 197 F.3d 1134, 1135 (11th Cir. 1999); Ward v. Booker, 202 F.3d 1249, 1256–57 (10th Cir. 2000). Two circuit courts reached the contrary result. *See* Bellis v. Davis, 186 F.3d 1092, 1095 (8th Cir. 1999); Bowen v. Hood, 202 F.3d 1211, 1220 (9th Cir. 2000). The Supreme Court granted certiorari to resolve the circuit split. In Lopez v. Davis, the Court upheld the validity of the 1997 interim rule, reasoning that the BOP permissibly exercised the discretion afforded the agency by the statute to narrow the class of prisoners eligible for early release. 531 U.S. 230, 239–41, 121 S. Ct. 714, 148 L. Ed. 2d 635 (2001).

On December 22, 2000, the BOP promulgated a final rule, which adopted the 1997 interim rule without change. *See* 65 Fed. Reg. 80745, 80747–48 (Dec. 22, 2000). The final rule, 28 C.F.R. § 550.58, reads in relevant part:

> An inmate who was sentenced to a term of imprisonment . . . for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.
>
> (a) Additional early release criteria.
>
>     (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

> . . . .
> (vi)   Inmates whose current offense is a felony:
> . . . .
> > (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon . . . .

28 C.F.R. § 550.58(a)(1)(vi)(B). As previously discussed, Program Statement 5162.04 provides that "[a]n inmate will be denied the benefits of certain programs if his or her offense is either a crime of violence or an offense identified at the discretion of the Director of the Bureau of Prisons." Program Statement 5162.04, § 1 (Oct. 9, 1997). Section 7 of this program statement lists offenses that preclude program benefits at the Director's discretion even though the offenses may not be categorized as crimes of violence. Included in this list is "[a]ll offenses under 18 U.S.C. § 922(g)." *Id.*, § 7.e.

In Petitioner's first claim, he contends the BOP's decision to deny him early release benefits under 18 U.S.C. § 3621(e) is an abuse of discretion and not in accordance with the law; therefore, this court should hold unlawful or set aside the decision, pursuant to 5 U.S.C. § 706(2)(A). Section 706(2)(A) provides that "a reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). "[W]e give deference to a final agency decision by reviewing for clear error, and we cannot substitute our own judgment for that of the agency." Sierra Club v. Johnson, 541 F.3d 1257, 1264 (11th Cir. 2008) (citation omitted). Under this standard, "we must consider whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* (quotations omitted). The Supreme Court articulated the scope of review as follows:

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." In reviewing that explanation, [courts] must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or

is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L. Ed. 2d 443 (1983).

Agency interpretations of statutes they have responsibility for administering are reviewed using a two-step analysis. Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842, 104 S. Ct. 2778, 2781, 81 L. Ed. 2d 694 (1984). A court must first determine whether Congress has "directly spoken to the precise question at issue. *Id.*, 467 U.S. at 843. If the intent of Congress is clear, that is the end of the matter." *Id.* at 843 n.9. If Congress did not express its intent unambiguously, the court must defer to the agency's interpretation if it "is based on a permissible construction of the statute." Legal Envtl. Assistance Found., Inc. v. EPA, 118 F.3d 1467, 1473 (11th Cir. 1997) (quoting Chevron, 467 U.S. at 843). Accordingly, it is well recognized that "when an agency is charged with administering a statute, part of the authority it receives is the power to give reasonable content to the statute's textual ambiguities" — in other words, the authority to fill gaps. Dep't of Treasury, IRS v. Fed. Labor Relations Auth., 494 U.S. 922, 933, 110 S. Ct. 1623, 1629, 108 L. Ed. 2d 914 (1990); *see also* Miami-Dade County v. U.S. E.P.A., 529 F.3d 1049, 1062–63 (11th Cir. 2008) (citation omitted).

Under the first level of the Chevron analysis, the court employs the "traditional tools of statutory construction" to determine Congressional intent. *See* Chevron, 467 U.S. at 843 n.9. These tools include examination of the text of the statute, its structure, and its stated purpose. *See* Miami-Dade County, 529 F.3d at 1063 (citation omitted).

As previously noted, the relevant statutory text is as follows:

> The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

18 U.S.C. § 3621(e)(2)(B). The statute does not unambiguously state Congressional intent with regard to the reduction of periods of incarceration for inmates convicted of offenses under 18 U.S.C. § 922(g). Furthermore, the statute makes <u>permissive</u> the BOP's determination to grant a reduction in sentence upon an inmate's successful completion of an RDAP. When an eligible inmate successfully completes drug treatment, the BOP has the authority, but not the duty, to reduce his

term of imprisonment. Lopez, 531 U.S. at 241. Therefore, the court must proceed to the second level of the Chevron analysis, which requires the court to defer to the agency's interpretation if it "is based on a permissible construction of the statute."

Petitioner maintains that 28 C.F.R. § 550.58 is an invalid regulation because the BOP failed to comply with 5 U.S.C. § 706(2)(A) when promulgating the regulation. Petitioner's argument is based on the Ninth Circuit's decision in Arrington, in which the Ninth Circuit held that the BOP's promulgation of 28 C.F.R. § 550.58(a)(1)(vi)(B) is invalid because the BOP failed to articulate in the administrative record sufficient justification for the regulation when it finalized it on December 22, 2000, thereby rendering it arbitrary and capricious in violation of 5 U.S.C. § 706(2)(A) of the APA.[2] Arrington, 516 F.3d at 1112–16. The Ninth Circuit reached its decision in Arrington as follows. It first recognized that under the APA's "arbitrary and capricious" standard set forth at 5 U.S.C. § 706(2)(A), a federal court's scope of review is narrow and deferential. Arrington, 516 F.3d at 1112 (citation omitted). It acknowledged that an agency action is valid "if a reasonable basis exists for [the agency's] decision." *Id.* (internal quotation and citation omitted). The Ninth Circuit next stated that a federal court "may look only to the administrative record to determine whether the agency has articulated a rational basis for its decision." *Id*. (citing Motor Vehicle Mfrs. Ass'n of U.S., Inc., 463 U.S. at 50) ("It is well established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.")) (other citations omitted). It noted that "[p]ost hoc explanation of agency action by appellate counsel cannot substitute for the agency's own articulation on the basis for its decision." *Id*. (citing Fed. Power Comm'n v. Texaco, Inc., 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974)).

Next, the Ninth Circuit concluded that the administrative record showed that the BOP articulated one basis for categorically excluding inmates convicted of felonies involving the possession, carrying, or use of firearms from receiving 18 U.S.C. § 3621(e)(2)(B)'s early release benefit: the need for uniformity in the application of the implementing regulation. *Id.* at 1113–14

---

[2]The undersigned is aware that 18 U.S.C. § 3625 provides that: "The provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." However, § 3625 does not apply to Petitioner's claim because Petitioner does not challenge the making of any determination, decision, or order; rather, he challenges the BOP's rulemaking. *See* Jasperson v. Federal Bureau of Prisons, 460 F. Supp. 2d 76, 84 (D.D.C. 2006). The Bureau does not contend otherwise.

Case No.: 5:08cv204/RH/EMT

(citing 65 Fed. Reg. 80747 (Dec. 22, 2000)). The Ninth Circuit then held that this rationale did not justify the BOP's action. *Id.* at 1114. It explained:

> A general desire for uniformity provides no explanation for why the Bureau exercised its discretion to achieve consistency through the promulgation of a categorical *exclusion* rule. The Bureau's stated desire for uniformity could have been accomplished in any number of ways. For example, the Bureau could have achieved uniformity by categorically *including* prisoners with nonviolent convictions involving firearms, thus making them eligible for early release: a result that would have been entirely consistent with the statute's aim of offering incentives for prisoner participation in residential substance abuse programs. Instead, it chose to achieve uniformity by categorically *excluding* such prisoners from eligibility. Although either choice in all likelihood would have withstood judicial scrutiny, the Bureau offered no explanation for why it exercised its discretion to select one rather than the other. The agency's lack of explanation for its choice renders its decision arbitrary and capricious. *See, e.g.*, Burlington Truck Lines, Inc., 371 U.S. [156, 167], 83 S. Ct. 239[, 9 L. Ed. 2d 207 (1962)] (striking down action for failure to explain why agency chose one of two available remedies where "[t]here are no findings and no analysis here to justify the choice made, no indication of the basis on which the [agency] exercised its expert discretion").

*Id.* (emphasis in original).

The Ninth Circuit refused to consider the rationale that the BOP chose the categorical exclusion because of the increased risk that offenders with convictions involving firearms might pose to the public. *Id.* at 1113. That public safety rationale, the Ninth Circuit concluded, was not stated in the administrative record, but only was articulated in the BOP's brief to the Supreme Court in Lopez. *Id.* (citing Lopez, 531 U.S. at 23 (quoting Brief for Respondents at 30)). The Ninth Circuit held that the public safety rationale "is precisely the type of 'post hoc rationalization [ ]' of appellate counsel that we are forbidden to consider in conducting review under the APA." *Id.* (quoting Burlington Truck Lines, Inc., 371 U.S. at 168). Therefore, the Ninth Circuit concluded, although the public safety rationale could be considered in evaluating the validity of the regulation under Chevron, *see* Lopez, 531 U.S. at 236–45, it could not be taken into account when evaluating the validity of the regulation under 5 U.S.C. § 706(2)(A) of the APA. *Id.* at 1113–16.

To date, no court outside the Ninth Circuit has followed Arrington, and most courts have rejected Arrington as contrary to Lopez v. Davis. *See* Muolo v. Quintana, 593 F. Supp. 2d 776 (W.D. Pa. 2009); Minotti v. Whitehead, 584 F. Supp. 2d 750 (D. Md. 2008); *see also* Norcutt v. Zych, No. 08-CV-14888, 2009 WL 514083 (E.D. Mich. Mar. 2, 2009) (unpublished); Holloway v.

Eichenlaub, No. 08-11347, 2009 WL 416325 (E.D. Mich. Feb. 18, 2009) (unpublished); Griffin v. Federal Bureau of Prisons, No. 3:08-2080-SB, 2009 WL 482352 (D.S.C. Feb. 23, 2009) (unpublished); Gardner v. Grandolsky, No. 08-6127 (RMB), 2009 WL 467848 (D.N.J. Feb. 23, 2009) (unpublished); Johnson v. Phillips, No. 1:08CV179, 2009 WL 304744 (N.D. W.Va. Feb. 6, 2009) (unpublished); Huerta v. Berkebile, No. 3:09-CV-008-L, 2009 WL 230163 (N.D. Tex. Jan. 30, 2009) (unpublished); Martinez v. Berkebile, No. 3-08-CV-1788-D, 2009 WL 159231 (N.D. Tex. Jan. 21, 2009) (unpublished); Cross v. Berkebile, No. 3-08-CV-1379-M, 2009 WL 159280 (N.D. Tex. Jan. 21, 2009) (unpublished); Clark v. Berkebile, No. 3-08-CV-1718-M, 2009 WL 89251 (N.D. Tex. Jan. 13, 2009) (unpublished); Serrano v. Berkebile, No. 3-08-CV-1587-K, 2009 WL 81017 (N.D. Tex. Jan. 9, 2009) (unpublished); Ramirez v. Berkebile, 2008 WL 5435334 (N.D. Tex. Dec. 31, 2008) (unpublished); Snipe v. Dep't of Justice, No. 3:08-cv-22, 2008 WL 5412868 (N.D. W.Va. Dec. 23, 2008) (unpublished); Sinclair v. Eichenlaub, No. 2:07-CV-12967, 2008 WL 5235981 (E.D. Mich. Dec. 15, 2008) (unpublished); Neal v. Grondolsky, 2008 WL 4186901 (D.N.J. Sept.9, 2008) (unpublished); Gatewood v. Outlaw, 2008 WL 2002650 (E.D. Ark. May 8, 2008) (unpublished).

The undersigned declines to follow the Ninth Circuit ruling in Arrington because none of the requirements for an arbitrary and capricious finding is apparent here, and because the BOP's rationale for promulgating 28 C.F.R. § 550.58 withstands the APA's highly deferential standard of review. In its comments in the Federal Register, the BOP explained that it was amending 28 C.F.R. § 550.58 (1995) in order to address the legal issues raised by the courts of appeals in the litigation that followed the enactment of that regulation and Program Statement 5162.02, so that it could uniformly apply its policies throughout the country. 65 Fed. Reg. 80747–48 (Dec. 22, 2000). That rationale is not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). *See, e.g.*, Cross, 2009 WL 159280, at **4–7 (rejecting petitioner's APA challenge to BOP's decision not to reduce sentence upon successful complete of drug treatment program due to petitioner's conviction for felon in possession of ammunition under 18 U.S.C. § 922(g)(1)).

Finally, Petitioner's challenge to the BOP's denial of a sentence reduction on equal protection grounds is without merit. To state a claim for an equal protection violation based on the unequal administration or enforcement of neutral statutes and policies, Petitioner must show the

following: (1) he is similarly situated to others who received different treatment, and (2) the different treatment was motivated by a discriminatory purpose. Strickland v. Alderman, 74 F.3d 260, 264 (11th Cir. 1996); E&T Realty v. Strickland, 830 F.2d 1107, 1112–13 (11th Cir. 1987). Thus, in order to assert a viable equal protection claim, Petitioner must first make a threshold showing that he was similarly situated in the relevant aspects to those who received more favorable or different treatment. *See, e.g.*, Campbell v. Rainbow City, Ala., 424 F.3d 1306, 1314–1317 (11th Cir. 2006) (rejecting an equal protection claim where developer had not established that other projects were similarly situated in terms of, *inter alia*, proposed use, number of variances sought, procedural status and documentation presented to zoning board). Petitioner must also allege Respondent acted with the intent to discriminate against him. *See* McClesky v. Kemp, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767, 95 L. Ed. 2d 262 (1987); E & T Realty, 830 F.2d at 1113. There must be intentional discrimination: "[m]ere error or mistake in judgment" or "[e]ven arbitrary administration of a statute, without purposeful discrimination, does not violate the equal protection clause." E & T Realty, 830 F.2d at 1114. "'Discriminatory purpose' implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker . . . selected . . . a particular course of action at least in part 'because of' its adverse effects upon an identifiable group." *Id.* (quoting Personnel Adm'r v. Feeney, 442 U.S. 256, 279, 99 S. Ct. 2282, 2296, 60 L. Ed. 2d 870 (1979) (omission in original)). Conclusory allegations or assertions of personal belief of disparate treatment or discriminatory intent are insufficient. GJR Investments, Inc. v. County of Escambia, Fla., 132 F.3d 1359, 1367–68 (11th Cir. 1998) (finding that allegations that defendants' actions were "arbitrary and capricious in that [they] acted with an improper motive, without reason, or upon a reason that was merely pretextual" were insufficient to state a claim); Coon v. Ga. Pac. Corp., 829 F.2d 1563, 1569 (11th Cir. 1987).

In this case, Petitioner has failed to show that he is similarly situated with those inmates who have received the benefit of the Arrington decision. Quite simply, while Arrington may be persuasive authority in other jurisdictions, at this time, it is only applicable to inmates within the Ninth Circuit. Petitioner is not incarcerated within the Ninth Circuit. Thus, he is not situated the same as those inmates who have thus far received a benefit from that decision. For that same reason, Petitioner cannot show that his alleged unequal treatment is a result of intentional or purposeful

discrimination; instead, any "unequal treatment" is simply a matter of location. Therefore, his equal protection claim is without merit.

Accordingly, it is **ORDERED**:

1. The clerk of court is directed to change the docket to reflect that Ike Eichenlaub is substituted for Scott Middlebrooks as Respondent.

2. Petitioner's motion to expedite (Doc. 16) is **DENIED** as moot.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED** with prejudice.

At Pensacola, Florida, this 18th day of March 2009.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these findings and recommendations may be filed within ten (10) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. Failure to object may limit the scope of appellate review of factual findings.** *See* **28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**